(248 P.3d 752)
No. 103,352

STEVEN K. BLOOM, *Appellant*, v. FNU ARNOLD, *et al.*, *Appellees*.

Opinion filed January 21, 2011.

*Steven Kent Bloom*, appellant pro se.

*Libby K. Snider*, special assistant attorney general, for appellees.

Before STANDRIDGE, P.J., MARQUARDT and LEBEN, JJ.

STANDRIDGE, J.: Steven K. Bloom, a pro se appellant and inmate at Lansing Correctional Facility (LCF), appeals the district court's decision to dismiss his petition pursuant to K.S.A. 60-212(b)(6). For the reasons stated below, we reverse and remand with instructions for further proceedings.

## FACTS

On or about November 4, 2005, Bloom's Unit Team Manager, Officer Medill, assigned Bloom to the job of dining room porter. On November 9, 2005, Officer Arnold issued a summary judgment citation to Bloom for failing to report to this job assignment. See K.A.R. 44-13-201b(a). Bloom refused to consent to summary judgment. See K.A.R. 44-13-201b(c)(3). This refusal prompted the citation to be construed as a disciplinary report, which necessarily initiated the formal disciplinary hearing process. See K.A.R. 44-13-201b(c)(3)(B).

A disciplinary disposition hearing was scheduled for November 16, 2005. The day before the hearing, Bloom submitted a document to the disciplinary commission seeking dismissal of the disciplinary charges against him. Bloom argued dismissal was proper because his medical restrictions prohibited him from performing the job of dining room porter to which he was assigned. To that end, Bloom asserted that Officer Medill assigned Bloom to a job

he was physically unable to perform in retaliation for being served with a federal lawsuit in which Bloom named Officer Medill as a defendant. Bloom also asserted that at the time he was assigned to report to work as a dining room porter, he was still subject to "UAC" (unassigned for cause) sanctions imposed against him from a prior disciplinary action that relieved prison authorities of any duty to assign Bloom to a paying job.

The hearing took place as scheduled on November 16, 2005. Defendant Cooper presided over the hearing and ultimately concluded that Bloom was properly disciplined for failing to report to work as assigned because the UAC sanctions imposed against Bloom did not prevent the prison authorities themselves from assigning Bloom to a job.

On December 14, 2005, Bloom submitted to a member of his unit team a Kansas Department of Corrections form he had completed entitled "Disciplinary Appeal to the Secretary of Corrections." The unit team member formally acknowledged by way of signature that he received the form and supporting documents on that date. In support of his challenge to the disciplinary action taken against him, Bloom reiterated his claim that Officer Medill assigned Bloom to a job he was physically unable to perform in retaliation for being served with a federal lawsuit in which Bloom named Officer Medill as a defendant. In his supporting documentation, Bloom submitted a return of process document filed in the federal lawsuit indicating that the United States Marshal served Officer Medill with a copy of the complaint by first class mail on October 24, 2005. Bloom appeared to base his claim of retaliation on the fact that he was assigned to the dining room porter job only 11 days after Officer Medill had been mailed a copy of the complaint and summons in his federal lawsuit.

Although there is no direct evidence in the record, it appears the unit team member forwarded the appeal and corresponding paperwork to the Secretary of Corrections. Regardless, the record does reflect that the appeal packet was returned to the unit team pursuant to a memo dated February 8, 2006. This memo was from the Secretary of Corrections and indicated it was returning the appeal without disposition because the unit team failed to include

all of the paperwork necessary to resolve the appeal. See K.A.R. 44-13-703(b) (charging unit team with responsibility to formally initiate appeal upon request of inmate and to assure that all necessary forms are included before appeal is forwarded to Secretary).

On February 27, 2006, Bloom resubmitted the form and documents necessary to support his request for the unit team to initiate a disciplinary appeal to the Secretary of Corrections on his behalf. A unit team member formally acknowledged receipt of the form and supporting documents on February 28, 2006. Upon review of the case on appeal, legal counsel for the Secretary of Corrections recommended that the decision of the hearing officer be affirmed. In support of this recommendation, legal counsel observed the evidence supported a finding that Bloom was properly disciplined for failing to report to work and there were no facts to support Bloom's allegations of retaliation by Officer Medill in assigning Bloom to the job of dining room porter. Notwithstanding the recommendation of legal counsel, the Secretary of Corrections ultimately decided on April 6, 2006, to revoke the finding of the disciplinary hearing officer and absolve Bloom from liability for failing to report to work on grounds that the Secretary had failed to respond to Bloom's appeal in a timely manner. Bloom received a copy of the Secretary's decision on April 18, 2006.

On April 16, 2008, Bloom initiated the lawsuit at issue in this appeal by mailing to the Leavenworth County District Court a petition naming as defendants Officer Arnold, Officer Medill, Hearing Officer Cooper, and Warden David McKune (Defendants). In the petition, Bloom alleged his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated when (1) Officer Medill assigned him to a job he was physically unable to perform in retaliation for being served with a federal lawsuit in which he named Officer Medill as a defendant; (2) Officer Arnold filed a disciplinary report against him for failing to report to that job; (3) Hearing Officer Cooper concluded that Bloom was properly disciplined for failing to report to work as assigned; and (4) Warden McKune failed to properly supervise those prison employees who violated his rights to make sure they were complying with all administrative regulations and

were not violating the rights of prisoners guaranteed by the United States Constitution.

In response to the petition, Defendants filed two separate motions to dismiss. The first motion alleged Bloom failed to exhaust his administrative remedies as required before filing suit. The second motion alleged the district court lacked jurisdiction to review agency actions concerning the management or discipline of inmates. Based on its decision to construe Bloom's petition as a civil suit for abuse of process, the district court denied both motions to dismiss. In light of the district court's decision, Defendants filed a third motion to dismiss alleging failure to state a claim for abuse of process. This time, the district court granted the motion on grounds that Bloom asserted no facts to establish that Defendants utilized the prison disciplinary process for any reason other than those stated. In dismissing Bloom's petition for failing to state a claim for abuse of process, the court noted that "the process was employed in the manner it was intended for, and was carried out to an authorized conclusion. In fact the conclusion was favorable to the petitioner."

## ANALYSIS

When the district court has granted a motion to dismiss for failure to state a claim, the appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can be reasonably drawn therefrom. The appellate court then decides whether those facts and inferences state a claim based on the plaintiff's theory or any other possible theory. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008); see also *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004) (pro se pleadings are liberally construed).

In this case, the district court construed the allegations in Bloom's petition as a claim for abuse of process; thus, we must determine whether the facts and inferences set forth in the petition are sufficient to state a claim for abuse of process. Because we believe the allegations in Bloom's petition can be construed as a civil rights claim for retaliation pursuant to 42 U.S.C. § 1983 (2006), we also must determine whether the facts and inferences

set forth in the petition are sufficient to state a 42 U.S.C. § 1983 retaliation claim.

*Abuse of Process*

Under Kansas law, the essential elements of an action for abuse of process are "a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage" to the plaintiff. *McShares, Inc. v. Barry*, 266 Kan. 479, 494, 970 P.2d 1005, *cert. denied* 526 U.S. 1158 (1998). The district court construed Bloom's petition to allege that Defendants improperly used the prison administrative disciplinary process for the purpose of retaliating against him for filing a lawsuit against Officer Medill. In dismissing Bloom's claim, the district court found Bloom failed to aver sufficient facts to support the allegation that Defendants' actions were a pretext for retaliation. Noting that the disciplinary action against Bloom ultimately was revoked, the district court also found that Bloom failed to aver sufficient facts to support a claim of damage.

Although we affirm the district court's decision to dismiss Bloom's claim for abuse of process, we decline to do so for the reasons cited by the district court. This is because, assuming the truth of all of the facts alleged in Bloom's petition and the reasonable inferences that can be drawn therefrom, we believe Bloom sufficiently has alleged at this early stage of his lawsuit that Defendants improperly used the prison administrative disciplinary process as a pretext for retaliation.

Nevertheless, we find Bloom's cause of action for abuse of process is still insufficient to state a claim as a matter of law. This is because it is grounded in alleged misuse of the prison administrative disciplinary process, as opposed to misuse of the judicial process. Of those jurisdictions deciding the issue, the vast majority recognize an abuse of process claim only when the judicial process is involved, thereby deeming improper use of nonjudicial proceedings to be insufficient to support the claim. See *Moore v. Western Forge Corp.*, 192 P.3d 427, 438-39 (Colo. App. 2007) (collecting cases); see also Prosser and Keeton, Law of Torts § 121 (5th ed. 1984) (acknowledging general rule that abuse of process allegation

states claim only when judicial process is involved). The majority view is supported by the Restatement (Second) of Torts § 682 (1977), which purposely defines the cause of action as one involving abuse of a *legal* process: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

To that end, Kansas courts have defined legal process as "proceedings begun by a writ, warrant, summons, order or mandate; proceedings which invoke the aid of judicial process or decree." *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 515, 625 P.2d 494 (1981); *Palmer v. First Nat'l Bank of Kingman*, 10 Kan. App. 2d 84, 89, 692 P.2d 386 (1984); accord *High Plains Oil, Ltd. v. High Plains Drilling Program-1981, Ltd.*, 263 Kan. 1, 12, 946 P.2d 1382 (1997); *State v. Wagoner*, 123 Kan. 586, 588, 256 Pac. 959 (1927). Our Supreme Court specifically held in *Robbins-Leavenworth Floor Covering, Inc.* that "the term 'legal process' cannot include proceedings 'carried on wholly outside of court . . . without the aid of its process or decree.' " 229 Kan. at 516.

Likely because the term "legal process" consistently has been defined in Kansas to include only those proceedings which invoke the aid of judicial process, no Kansas appellate court has ever been asked to determine whether improper use of administrative or other nonjudicial proceedings is sufficient to support a claim for abuse of process under Kansas law. We did find one case where the Kansas Supreme Court was asked to review the sufficiency of an abuse of process claim alleging misuse of an administrative process, but the court was not asked to determine whether an abuse of process is a viable claim when based on proceedings that do not involve the judicial process in any way. See *Lindenman v. Umscheid*, 255 Kan. 610, 621-24, 875 P.2d 964 (1994) (reversing district court's decision to grant summary judgment in favor of state agency on plaintiff's abuse of process claim, which alleged state agency misused emergency procedures authorized by Kansas Administrative Procedures Act to enter order suspending plaintiff's childcare license). Instead, our Supreme Court was asked to decide

(1) whether the Kansas Judicial Review Act provides the exclusive remedy for an abuse of process claim against an administrative agency; (2) whether the statute of limitations governing an abuse of process claim had been tolled during the administrative review process; (3) whether an administrative agency enjoyed immunity against the abuse of process claim; and (4) whether there was a dispute of material fact with regard to ulterior motive, which is an essential element of the abuse of process claim. Because our Supreme Court was not presented with the issue, we do not believe the decision in *Lindenman* undercuts the prevailing law in Kansas limiting "legal process" to only those proceedings that invoke the aid of judicial process.

Based on the long-standing definition of the term "legal process" in Kansas, and consistent with the majority of those jurisdictions deciding the issue, we conclude as a matter of first impression in Kansas that the term "process" in an abuse of process claim limits the claim of abuse to those proceedings that invoke the aid of judicial process. In other words, an abuse of process claim based on improper use of an administrative or other nonjudicial proceeding is insufficient as a matter of law to support such a claim. Because Bloom's claim for abuse of process depends on proceedings before an administrative agency that did not invoke the aid of judicial process, his claim as construed by the district court fails as a matter of law in Kansas.

*Retaliation (42 U.S.C. § 1983)*

In his petition, Bloom alleges he was assigned to a job he was physically unable to perform and then disciplined for failing to report to that job in retaliation for filing a federal lawsuit against a prison official. We liberally construe these allegations to assert a civil rights claim for retaliation pursuant to 42 U.S.C. § 1983. Both state and federal courts are proper forums for such actions. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 12, 20 P.3d 39 (2001).

Prison officials may not retaliate against or harass an inmate based on the inmate's exercise of his or her right of access to the courts. *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). In order to sufficiently state a 42 U.S.C. § 1983 claim for retaliation

upon which relief can be granted, a plaintiff must include facts in the petition alleging that (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005). Based on our review of the pleadings, we believe Bloom included in his petition the necessary facts to sufficiently state a 42 U.S.C. § 1983 claim for retaliation at this early stage of the litigation.

Regarding the first prong, Bloom alleges Defendants retaliated against him for filing a complaint in federal court, an activity that long has been held to be constitutionally protected. See *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006), *cert. denied* 549 U.S. 1059 (2006) (" '[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.' ").

As to the second prong, Bloom alleges the retaliatory job assignment and resulting disciplinary action caused him to sustain the following injuries: (a) he was deprived of crucial time he needed to work on the merits of his direct appeal as a result of the time he spent defending himself from the charges of discipline and appealing the decision imposing discipline; (b) he was deprived of disability work benefits to which he was entitled; (c) he was subjected to a fine as a result of the hearing officer's decision to impose discipline; and (d) he was required to pay court costs to file a cause of action seeking redress for the unlawful acts of retaliation taken against him. Assuming the truth of Bloom's allegations, as we are required to do at this stage of the lawsuit, we believe these injuries are sufficient to chill a person of ordinary firmness from continuing to exercise his or her constitutional right to access the courts.

With regard to the third prong, Bloom alleges Officer Medill assigned him to a job that Medill knew Bloom was physically incapable of performing only 11 days after the United States Marshal served Medill with a complaint naming Medill as a defendant in Bloom's federal lawsuit. Assuming the facts alleged by Bloom re-

garding the window of time between the protected activity and the retaliatory action are true, we believe they are sufficient to support an inference that the adverse action taken by Defendants against Bloom was substantially based on Bloom's exercise of a constitutionally protected right.

In sum, we agree with the district court that Bloom's petition fails as a matter of law to state a claim for abuse of process but reverse the decision of the district court to dismiss Bloom's petition and remand with instructions to reinstate the petition and construe the allegations therein as a civil rights claim for retaliation pursuant to 42 U.S.C. § 1983. In carrying out this mandate, the district court shall provide Defendants with sufficient time to answer, to assert affirmative defenses, and to file any other responsive pleading to this newly asserted claim as construed herein.

Reversed and remanded with directions.